B. ORDOVER & SONS, INC. *v.* KAY.

Division A. Nov. 5, 1951.

No. 38071 (54 So. (2d) 729)

Bozeman & Bozeman, for appellant.

478

Snow & Covington, for appellee.

480

## Kyle, J.

The appellant, B. Ordover & Sons, Inc., sued the appellee, Sidney Kay, doing business under the trade name of Kay's, in the Circuit Court of Lauderdale County, for the sum of $1,635, which represented the value, less $50, of three fur coats alleged to have been shipped to the appellee in March 1948 upon a memorandum consignment for display to one of Kay's customers.

The case was tried in the circuit court before a jury and a verdict was returned for the defendant. A motion was made by the plaintiff to set aside the verdict and for judgment non obstante veredicto, or for a new trial. The motion was overruled and judgment was entered for the defendant. From that judgment the defendant has prosecuted this appeal.

The appellant was engaged in the wholesale fur business in the City of New York, and the appellee owned and operated a large retail department store in the City of Meridian. The parties had been doing business with each other for several years. The appellant had agreed to ship furs to Kay's on consignment for display to Kay's customers. If the customer in any such case failed to purchase the furs, Kay's agreed to ship the furs back to the appellant promptly.

In March 1948 Kay's had a customer who wished to purchase a fur coat. The appellee called the appellant over long distance telephone and requested the appellant to ship to the appellee immediately several fur coats for display to the prospective customer who was to be in Meridian only a few days; and on March 19 the appellant shipped to the appellee three China Mink fur coats. The coats were delivered to the Railway Express Agency,

Inc., for shipment to the appellee by air express at a declared value of $1,685. The coats were received by the appellee on March 22, and after Kay's customer had examined the same the appellee notified the appellant that the appellee was returning the coats to the appellant by the Railway Express Agency. The three coats were properly packed and delivered to the express agency for reshipment to the appellant, with a declared value of $50, and were lost while in transit from Meridian to New York.

The plaintiff charged in its declaration that it was the duty of the defendant, in returning the shipment of merchandise to the plaintiff, to so contract with the express agency as to impose upon the express agency its common law liability for the loss of the shipment for the benefit of the plaintiff, and that the defendant was negligent in accepting a receipt from the express agency, evidencing the carrier's contract, which limited the liability of the express agency in case of loss to the sum of $50.

The defendant in his answer denied that he had been guilty of negligence in making the return shipment of the merchandise in the manner alleged, without declaring the full value of the merchandise and paying the additional express charges, for the reasons, (1) that the defendant had had prior dealings with the plaintiff for many years and during that time had made many return shipments of merchandise to the plaintiff by Railway Express and that in making such return shipments it had been the uniform practice of the defendant to value the return shipments at $50 each, regardless of the invoice value; (2) that plaintiff had never complained of the manner in which such return shipments were made and had never instructed the defendant, either verbally or in writing, to place a higher value on return shipments than $50; (3) that the plaintiff had provided itself with a policy of insurance against loss of shipments of merchandise in transit while being returned to the plain-

tiff in New York, including return shipments made by the defendant, and that the plaintiff had informed the defendant of that fact.

There is very little conflict in the testimony as to the material facts. The record shows that the plaintiff had made many shipments of merchandise to the defendant on memorandum invoices or consignments. Kay testified that it had been customary for him to return merchandise to the plaintiff by Railway Express with a declared value of $50, and that the plaintiff had never complained of the manner in which such merchandise had been returned, and had given no instructions to him to pursue a different course. Kay gave specific dates of several such return shipments which had been made to the plaintiff during the months of December, January and February next preceding the date of the shipment involved in this litigation. Kay's attorneys also offered to prove by him that the plaintiff had made many shipments of furs to him by Railway Express at a declared value of $50 each, but plaintiff's attorneys objected to this testimony, and the objection was sustained by the court.

The record shows that the plaintiff carried insurance on all incoming shipments of merchandise returned to the plaintiff by the retail dealers to whom the plaintiff was accustomed to ship furs on memorandum consignments, and that Mr. Joseph Ordover, the plaintiff's treasurer, had so informed the defendant several years prior to the date of the shipment involved in this litigation.

The appellant's principal assignments of error on this appeal are (1) the admission of evidence offered by the defendant that the plaintiff carried insurance protecting the plaintiff against losses on incoming shipments lost in transit; (2) the refusal of the court to grant an instruction requested by the plaintiff to the effect that the delivery of the coats by the defendant to the Express Agency upon a receipt limiting the express company's liability for loss to $50 was not a legal delivery of the

coats to the plaintiff; (3) the refusal of the court to grant an instruction requested by the plaintiff to the effect that it was the duty of the defendant to exercise reasonable care to preserve to the plaintiff a remedy against the express company for the value of the coats lost in transit; (4) the refusal of the court to grant the peremptory instruction requested by the plaintiff; and (5) the granting of an instruction to the defendant to the effect that in making the return shipment to the plaintiff the defendant's only duty was to select a reputable transportation facility, and the granting of an instruction to the defendant to the effect that the defendant had a right to rely on the statement made to the defendant by Mr. Joseph Ordover that the plaintiff was protected against losses in transit on incoming shipments by insurance, and that the defendant was not guilty of negligence in relying on such statement.

The basis of the appellant's cause of action is the alleged negligence of the appellee in delivering the three fur coats to the express company for return shipment to the appellant under an express company's receipt limiting the liability of the carrier in case of loss to $50. The appellant contends that the appellee, in delivering the coats to the express company, should have declared the full value of the coats and paid the additional transportation charge, so as to preserve to the appellant a right of action against the carrier for the full value of the coats, in case the shipment was lost, and that the appellee's failure to declare the full value of the merchandise and appellee's acceptance of an express company's receipt limiting the company's liability to $50, represented a breach of appellee's duty to exercise ordinary care to protect the appellant's property.

In support of the appellant's theory of liability on this appeal the appellant's attorneys in their brief cite and rely mainly upon the early English case of Clarke v. Hutchins, 14 East 475, 104 Eng. Reports 683, and the case of Miller v. Harvey, 221 N. Y. 54, 116 N. E. 781,

L. R. A. 1917F, 559. The case of Clarke v. Hutchins, was decided by the Court of King's Bench in 1811. Lord Ellenborough, the Chief Justice, rendered the opinion. The case involved a shipment of goods from Plymouth to Gosport. The plaintiff had shipped the merchandise to its customer at Gosport without declaring its full value. Under the published rates charged by the carrier, the carrier would not be answerable for any package in a greater amount than five pounds, unless the package were entered and paid for at a greater value. The value of the goods sent in this instance was 51 pounds, but the plaintiff, as stated, had made no special entry or payment pursuant to the published notice of the carrier. In the published report of the case, it is expressly stated that there was no evidence of any prior dealings between the parties. The court held that: "The plaintiff cannot be said to have deposited the goods in the usual and ordinary way, for the purpose of forwarding them to the defendant, unless he took the usual and ordinary precaution, which the notoriety of the carriers' general undertaking required, with respect to goods of this value, to insure them a safe conveyance; that is, by making a special entry of them. He had an implied authority, and it was his duty to do whatever was necessary to secure the responsibility of the carriers for the safe delivery of the goods, and to put them into such a course of conveyance as that in case of a loss the defendant might have his indemnity against the carriers."

In the case of Miller v. Harvey, supra, the court held that the loss of goods in transit must fall on the seller and not on the buyer where the seller, in delivering the goods to the carrier, contracted for a liability of only fifty percent of their value, when he might have secured full liability at small additional expense, and the statute provided that the seller must make such contract with the carrier on behalf of the buyer as may be reasonable, failure to do which enables the buyer to decline to treat delivery to the carrier as delivery to himself. The court

in that case had under consideration the Sales of Goods Act of New York, Personal Property Law, McK.Consol. Laws, c. 41, Sec. 127, which provided that: "Unless otherwise authorized by the buyer, the seller must make such contract with the carrier on behalf of the buyer as may be reasonable, having regard to the nature of the goods and the other circumstances of the case. If the seller omit so to do, and the goods are lost or damaged in course of transit, the buyer may decline to treat the delivery to the carrier as a delivery to himself, or may hold the seller responsible in damages." The court, however, stated in its opinion that the above mentioned statute was declaratory of the rule at common law, which was declared more than a century ago in Clarke v. Hutchins, supra.

In neither of the above cases does it appear, however, that there had been prior dealings between the parties. In cases where there have been prior dealings between the parties coupled with the custom of under-valuation of shipments, if a shipment is lost, the English and New York courts have held that the consignee is not negligent in following the previous course of conduct. Cothay v. Tute, 3 Campbell 129, 170 English Reports 1329; Northern Assur. Co. Limited v. Wolk, 182 Misc. 112, 49 N. Y. S. (2d) 754, affirmed 269 App. Div. 768, 55 N. Y. S. (2d) 389; Graubart v. Posner, 188 Misc. 722, 68 N. Y. S. (2d) 910.

In the case of Cothay v. Tute, supra, which was tried by Lord Ellenborough at nisi prius six weeks after the decision in Clarke v. Hutchins had been rendered, the plaintiffs were dry-salters at London, the defendants dyers at Leeds. The defendants wrote a letter to the plaintiffs, desiring them to send down 60 pounds more of cochineal by the first coach. The plaintiffs accordingly delivered this quantity of cochineal at the coach office, to be carried to the defendants by a coach that ran from London to Leeds. At the coach office there was a notice stuck up, saying that the proprietors would not be answerable for any package above the value of five pounds, unless entered as such, and paid for accordingly. The cochineal

was not so entered, although worth about 150 pounds, and it was lost on the way to Leeds. There was no evidence of the manner in which the former cochineal had been sent. The defendants claimed that they were not liable for the value of the cochineal shipment because the plaintiffs had not given them a remedy over against the carrier; that the plaintiffs must be taken to have been aware of the notice, as well as the law upon the subject; that it was therefore the plaintiffs' duty to have entered the cochineal as above the value of five pounds; that without this, there was no sufficient delivery to the carrier to charge the defendants; and, as they had derived no benefit, so they were not liable to make any compensation. The court said: "The point made does not properly arise in this cause. The defendants ordered 60 pounds more of cochineal to be sent them. It was therefore incumbent upon them to show how the former parcel was sent, and whether it was entered and insured as above the value of 5 pounds.—Upon the general question I am not now called upon to give any decisive opinion; but, as it is in practice so unusual under these notices to enter and insure goods as above the limited value, I shall be inclined to hold that the vendor is not bound to do so, without express instructions for that purpose. Were he to insure of his own accord with the carrier, how far would the purchaser be liable for the heavy additional expense thus incurred? In this case the plaintiffs are clearly entitled to a verdict for the value of the goods."

In the case of Northern Assur. Co. Limited v. Wolk et al., supra, the insurer of fur coats, suing as subrogee for the amount of loss paid by the insurer, sought to recover the value of three fur coats worth $1,600, which had been shipped by Kahn Brothers and Pinto, Inc., to the defendants in Pittsburgh on consignment by the Railway Express on a $50 valuation, and which had been returned to Kahn in New York by the Railway Express, on a $50 valuation. The coats disappeared from the possession of the Railway Express, and the plaintiff, who insured Kahn,

paid the loss and brought suit as subrogee. The plaintiff charged that the defendant was guilty of negligence in returning the coats by the Railway Express and valuing them at $50, without Kahn's knowledge or consent, and thus prevented Kahn from recovering their full value from the carrier. The trial judge gave judgment in favor of the plaintiff, the Supreme Court reversed the judgment on appeal, and in its opinion said [182 Misc. 112, 49 N. Y. S. (2d) 756]:

"The parties had been doing business for many years, during which there were numerous shipments and returns. Invariably those shipments and returns were valued at $50 each, regardless of the invoice values. Kahn's insurance policy issued by the plaintiff covered goods while in transit, both going out and coming in, and contained an express provision that, irrespective of their true value, such shipments might be valued at $50.

"The defendant receiving the coats on consignment was a bailee and as such was required to use due and reasonable care. Berry Bros. v. Snowdon, 9 Cir., 209 F. 336; In re Thomas, D. C., 231 F. 513; Smith v. Economical Garage, 107 Misc. 430, 176 N. Y. S. 479. The evidence is clear that the defendant, as bailee, under the circumstances here presented, used such care as a prudent man would ordinarily use in connection with his own merchandise. It had long been the regular practice for these parties and those with whom they did business to insure shipments and returns at the nominal valuation of $50. It cannot be said, therefore, that it was negligent to do what these business men had, in fact, been doing for many years. * * *

"Miller v. Harvey, 221 N. Y. 54, 116 N. E. 781, L. R. A. 1917 F, 559, is not a holding to the contrary. There the parties were involved in a single transaction, whereas here we have a course of dealing since 1937. The fact that the defendant always paid the express charges both ways and, therefore, was the only one to save any money by the $50 valuations is without legal significance. The

question of who pays the freight does not increase or diminish the duty of the bailee.''

In the case that we now have before us, we are unable to say that the defendant acted other than as a reasonably prudent person would have acted under similar circumstances in re-shipping the coats to the plaintiff by Railway Express, with a declared value of $50. The parties had been doing business with each other for many years, during which there had been many shipments and returns of merchandise; and Kay testified that the return shipments had been made by him with a $50 valuation, and that Ordover had made no complaint with reference thereto and had neither instructed nor requested that Kay declare the full value of the merchandise in making return shipments to New York. Ordover had in fact told Kay that he carried insurance for his own protection against losses in transit of merchandise returned to him by retail dealers.

These facts indicate clearly that the plaintiff relied upon its insurance policy rather than the express company for protection against loss of incoming shipments; and, under these circumstances, it seems to us that if the plaintiff expected to hold the express company liable for the full value of merchandise lost in transit, or to reserve for itself, or its insurance carrier, a right of action against the express agency for the full value of merchandise lost in transit on return shipments to New York, the plaintiff was under duty to so advise the defendant and to request the defendant to declare the full value of the merchandise in each case. Kassvan v. Thomas E. McElroy Co., 7 Cir., 179 F. (2d) 97.

It is true that the plaintiff declared the full value of the coats involved in this litigation to the express agency in New York when the coats were delivered to the express agency for transportation to Meridian. But the reason for that was that the plaintiff's insurance policy, according to Ordover's own testimony, did not cover outgoing shipments from New York.

The appellant contends that the testimony relating to appellant's insurance was incompetent. But we think that proof that appellant had provided itself with insurance protection against losses on incoming shipments of merchandise returned to it by its retail customers and had so informed Kay was relevant and competent for the purpose of showing that Kay had not been guilty of negligence in failing to declare the full value of the merchandise involved in this case on the return shipment to New York.

The appellant also contends that the instructions given to the plaintiff and the instructions given to the defendant were inconsistent, contradictory and confusing to the jury. This criticism is in part well founded. But we think that the confusion is due mainly to errors contained in the plaintiff's instructions, which rendered the instructions more favorable to the plaintiff than the plaintiff was entitled to receive. The instructions granted to the defendant, although inaccurate in some respects and not entirely free from error, represent a substantially correct statement of the law when read together; and we do not think that the jury was misled by errors in the instructions when considered as a whole. The jury by their verdict found that the defendant, under the facts disclosed by the record, was not guilty of negligence in reshipping the coats by Railway Express to the plaintiff in New York with a declared value of $50. There was no real conflict in the testimony of the witnesses as to the material facts, and, if it be conceded that the instructions granted to the plaintiff and to the defendant were not entirely free from error, we think that the jury arrived at a correct decision and that the Court would not be justified in reversing the case because of the alleged errors in the instructions. The judgment of the lower court is therefore affirmed.

Affirmed.